1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  LARRY D. THOMAS,                          CASE NO. 1:07-CV-540-AWI-DLB-PC

10                       Plaintiff,           FINDINGS AND RECOMMENDATION
                                             RECOMMENDING DISMISSAL OF CERTAIN
11        v.                                 CLAIMS.

12  J. DIAZ, et al.,

13                       Defendants.
                                          /
14

15  I.        Screening Order

16            A.      Screening Requirement

17            Plaintiff Larry D. Thomas ("plaintiff") is a state prisoner proceeding pro se and in forma

18  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on

19  April 6, 2007.  The Court previously issued an order finding that plaintiff stated a cognizable

20  claim for relief against defendants Diaz, Rangel, Jordan, and Deathridge for use of excessive

21  force but failed to state any other claims for relief.  The Court granted plaintiff leave to file an

22  amended complaint.  On February 12, 2008, plaintiff advised that he did not want to file an

23  amended complaint and simply wanted to proceed against defendants Diaz, Rangel, Jordan, and

24  Deathridge on his cognizable claims.  Accordingly, the court now recommends to dismiss the

25  remaining claims and defendants.

26            The court is required to screen complaints brought by prisoners seeking relief against a

27  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

28  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

1   "frivolous or malicious;" that fail to state a claim upon which relief may be granted; or that seek

2   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1) &

3   (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

4   shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

5   state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

6          A court may dismiss a complaint only if it is clear that no relief could be granted under

7   any set of facts that could be proved consistent with the allegations.  Swierkiewicz v. Sorema N.

8   A., 534 U.S. 506, 514 (2002).  "'The issue is not whether a plaintiff will ultimately prevail but

9   whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on

10  the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'"

11  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232,

12  236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need

13  suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin,

14  262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal pleading standard . . . applies only to

15  a plaintiff's factual allegations."  Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal

16  interpretation of a civil rights complaint may not supply essential elements of the claim that were

17  not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997)

18  (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

19         B.     Summary of Plaintiff's Complaint

20         Plaintiff is an inmate currently housed at the California Department of Corrections and

21  Rehabilitation  State Prison in Delano.  However, the events stated in his complaint took place at

22  Pleasant Valley State Prison.  Plaintiff names as defendants: Correction Officers J. Diaz, A.

23  Rangel, J. Jordan and S. Deathridge; and P. Catalano, L.V.N.  Plaintiff is seeking compensatory,

24  general and punitive damages, reasonable costs and attorney's fees, injunctive, declaratory, and

25  other equitable relief.

26         Plaintiff alleges that, subsequent to his filing an "Employee Misconduct/Sexual

27  Misconduct Complaint" against Diaz, plaintiff was subjected to retaliation at the behest of Diaz,

28  and by direct action(s) on the part of Diaz, Rangel, Jordan and Deathridge.  Plaintiff alleges that,

1   because of his use of the grievance system: Diaz kicked his cell door at 6:20 a.m. and ordered

2   that he take his window coverings down -- despite the fact that plaintiff had skipped breakfast to

3   sleep in and that window coverings were not required to be taken down until 8:00 a.m.; that

4   plaintiff was forced to make multiple cell moves; that Diaz instigated a new procedure for

5   morning medical procedures (just to irritate and vex plaintiff) such that all diabetic inmates were

6   to receive their insulin injections prior to inmates having their blood pressure taken and thereafter

7   receiving their DOT hypertension medications (plaintiff was the only inmate requiring DOT

8   hypertension medication); and that on June 29, 2006, plaintiff was subjected to excessive force at

9   the hands of Diaz, Rangel, Jordan and Deathridge at Diaz's behest in retaliation for plaintiff's

10   use of the grievance system.  Plaintiff further alleges that P. Catalano, L.V.N. was deliberately

11   indifferent to plaintiff's medical needs by failing to request an R.N. or M.D. to examine plaintiff

12   and for failing to clean and bandage his abrasions/wounds subsequent to the June 29, 2006

13   incident.

14          C.     Plaintiff's Section 1983 Claims

15               1.     Linkage Requirement

16   The Civil Rights Act under which this action was filed provides:

17
18   > Every person who, under color of [state law] . . . subjects, or causes
   > to be subjected, any citizen of the United States . . . to the
   > deprivation of any rights, privileges, or immunities secured by the
   > Constitution . . . shall be liable to the party injured in an action at
19   > law, suit in equity, or other proper proceeding for redress.

20   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

21   the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

22   Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

23   (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

24   constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

25   in another's affirmative acts or omits to perform an act which he is legally required to do that

26   causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

27   Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named

28   defendant with some affirmative act or omission that demonstrates a violation of plaintiff's

1   federal rights.

2       In order to proceed under section 1983, plaintiff must allege sufficient facts to support a

3   claim that *each* defendant named in the complaint either acted or failed to act in a manner that

4   was adverse to plaintiff and that the defendant(s) did so in retaliation against plaintiff for either

5   litigating in court or filing inmate grievances.

6       2.   Retaliation

7       Allegations of retaliation against a prisoner's First Amendment rights to speech or to

8   petition the government may support a § 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th

9   Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.

10  Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

11  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

12  adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

13  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

14  not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-

15  68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file

16  a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d

17  1283, 1288 (9th Cir. 2003).  Adverse action is action that "would chill a person of ordinary

18  firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770

19  (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486

20  F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v.

21  Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George

22  Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.

23  2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Both litigation in court and filing

24  inmate grievances are protected activities and it is impermissible for prison officials to retaliate

25  against inmates for engaging in these activities.  However, not every allegedly adverse action will

26  be sufficient to support a claim under section 1983 for retaliation.  In the prison context, cases in

27  this Circuit addressing First Amendment retaliation claims involve situations where the action

28  taken by the defendant was clearly adverse to the plaintiff.  Rhodes, 408 F.3d at 568 (arbitrary

4

confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation

for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative

segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang

member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory

issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory

prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch

and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-

32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that his constitutional rights were violated by the unjustified and

unnecessary retaliation, interference, and punishment of the plaintiff instigated by Diaz via:  Diaz

kicking plaintiff's cell door at 6:20 a.m. and ordering that he take his window coverings down --

despite the fact that plaintiff had skipped breakfast to sleep in and that window coverings were

not required to be taken down until 8:00 a.m.; multiple cell moves; a new procedure for morning

medical procedures (just to irritate and vex plaintiff) such that all diabetic inmates were to

receive their insulin injections prior to inmates having their blood pressure taken and thereafter

receiving their DOT hypertension medications (plaintiff was the only inmate requiring DOT

hypertension medication, and presumably was made to wait for dispensing thereof until the other

inmates were cared for); and on June 29, 2006, plaintiff was subjected to excessive force at the

hands of Diaz, Rangel, Jordan and Deathridge at Diaz's behest in retaliation for plaintiff's use of

the grievance system.

Plaintiff has alleged the requisite elements for retaliation.  However, as to being

awakened early on one morning, being moved from cell to cell, and the new morning medical

procedures, the court finds that these instances, even when viewed as a whole and in light of

retaliation claims, do not rise to the level of violating plaintiff's constitutional rights.

3.    Interference with Plaintiff's use of the Prison Grievance System

To the extent plaintiff attempts to state a claim relating to the processing of his use of the

grievance system within the prison, plaintiff is advised that,  "[a prison] grievance procedure is a

procedural right only, it does not confer any substantive right upon the inmates."  Buckley v.

1  Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.

2  Ill. 1982)); Sandin v. Conner, 515 U.S. 472, 484 (1995) (Liberty interests created by state law are

3  generally limited to freedom from restraint which "imposes atypical and significant hardship on

4  the inmate in relation to the ordinary incidents of prison life."); Ramirez v. Galaza, 334 F.3d 850,

5  860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a

6  specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence

7  of grievance procedure confers no liberty interest on prisoner); see also Mann v. Adams, 855

8  F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest

9  requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez v.

10  DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  The

11  failure to process a grievance does not state a constitutional violation, and a prison official's

12  involvement and actions in reviewing a prisoner's administrative appeal cannot serve as the basis

13  for liability under a § 1983 action.  Buckley, 997 F.2d at 495.  There is no constitutionally

14  protected right to an appeals process and there is no constitutionally protected right to a particular

15  outcome.  Even if interference with plaintiff's use of the prison grievance occurred in retaliation

16  for his prior use of that system, defendants' actions in interference with and/or reviewing and

17  issuing decisions on the appeals do not provide a basis upon which to impose liability under

18  section 1983.  Therefore, any claims plaintiff is attempting to assert, regarding the interference

19  with his use of the prison grievance system do not rise to the level of a protected constitutional

20  right.

21          4.     Excessive Force

22          Plaintiff alleges that, on June 29, 2006, Diaz, Rangel, Jordan and Deathridge used

23  excessive force against him.

24          "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

25  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson

26  v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim

27  is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation

28  marks and citations omitted).  The malicious and sadistic use of force to cause harm always

6

violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  An officer can be held liable for failing to intercede only if he had a "realistic  opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Plaintiff alleges that, on June 29, 2006, Diaz, Rangel, Jordan and Deathridge "wrestled" plaintiff to the ground in a forceful manner, without giving the verbal order for plaintiff to "get down" -- despite the fact that plaintiff was not resisting submission; that Diaz pushed plaintiff's face to the asphalt; that while plaintiff was handcuffed, Rangel, Jordan and Deathridge sat on plaintiff's back and legs, and Diaz gouged his fingers into plaintiff's eyes; that the handcuffs were tightened so as to restrict the blood flow; that these defendants thereafter walked plaintiff to

1    the clinic in a bent over crouch rather than being allowed to walk up-right – as a result, plaintiff

2    alleges he sustained abrasions and wounds to his face, scars from the handcuffs, nerve injury to

3    his left hand and fingers, and exacerbation of a prior lower back injury.

4    Thus, plaintiff has stated a prima facie claim for use of excessive force against him by

5    Diaz, Rangel, Jordan, and Deathridge in violation of his Eighth Amendment rights.

6                                    5.    Medical Needs

7    Plaintiff alleges that Catalano's failure to cleanse, bandage and/or treat plaintiff's injuries

8    (some of which were "bleeding profusely" during Catalano's visual examination) and his failure

9    to refer plaintiff to someone qualified and licensed to diagnose plaintiff's injuries, subsequent to

10    the June 29, 2006 altercation, constitutes deliberate indifference to plaintiff's serious medical

11    needs in violation of plaintiff's Eighth Amendment constitutional rights.

12    A prisoner's claim of inadequate medical care does not constitute cruel and unusual

13    punishment unless the mistreatment rises to the level of "deliberate indifference to serious

14    medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference"

15    standard involves an objective and a subjective prong. First, the alleged deprivation must be, in

16    objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing

17    Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a

18    "sufficiently culpable state of mind," which entails more than mere negligence, but less than

19    conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837.

20    A prison official does not act in a deliberately indifferent manner unless the official "knows of

21    and disregards an excessive risk to inmate health or safety." Id.

22    In applying this standard, the Ninth Circuit has held that before it can be said that a

23    prisoner's civil rights have been abridged, "the indifference to his medical needs must be

24    substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

25    cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

26    Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or

27    treating a medical condition does not state a valid claim of medical mistreatment under the

28    Eighth Amendment. Medical malpractice does not become a constitutional violation merely

because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff's contentions that Catalano was deliberately indifferent of plaintiff's medical condition as he failed to cleanse, bandage and/or treat plaintiff's injuries (some of which were "bleeding profusely" during Catalano's visual examination) and to refer plaintiff to someone qualified and licensed to diagnose plaintiff's injuries, subsequent to the June 29, 2006 altercation, do not satisfy the requirements for showing deliberate indifference which caused a delay so as to lead to further injury. Thus, plaintiff has failed to state a claim under the Eighth Amendment for violation of his constitutional rights for deliberate indifference to his serious medical needs.

II.   Conclusion

For the reasons set forth above and base don plaintiff's notice to the court of February 12, 2008, the Court HEREBY RECOMMENDS that this action proceed only against defendants Diaz, Rangel, Jordan, and Deathridge on plaintiff's excessive force claims and that all other claims and defendants be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty days

after being served with these findings and recommendations, plaintiff may file written objections

with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations."  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir. 1991).

 

 

   IT IS SO ORDERED.

**Dated:   February 25, 2008**          _____/s/ **Dennis L. Beck**_____
                                   UNITED STATES MAGISTRATE JUDGE