IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

|  |  |  |
|---|---|---|
| LARRY THOMAS, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  1:07-cv-0540-BLW-MHW |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| J. DIAZ, *et al.*, | ) ) | |
| Defendants. | ) ) | |

Currently pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 35), filed March 23, 2009.  Having reviewed the motion and relevant portions of the record, the Court concludes that oral argument is unnecessary to resolve the Motion. Accordingly, the Court enters the following Report and Recommendation.

**REPORT**

**I.
FACTUAL BACKGROUND**

On June 29, 2006, while incarcerated at Pleasant Valley State Prison, Plaintiff was exiting Building 3 and ignored Officer Diaz's orders to stop walking.  Plaintiff claims Officer Diaz was trying to stop him from speaking with the facility lieutenant.  Officer Rangel ordered Plaintiff to put his hands on the wall and Plaintiff complied.  Officer Rangel tried to verbally calm Plaintiff. Plaintiff alleges he told Officer Diaz that he was going to speak with the facility lieutenant

Page 1

regarding a cell transfer. Officer Diaz grabbed Plaintiff's left hand and a struggle ensued.

Approximately twenty seconds later, Officer Rangel assisted Officer Diaz in bringing Plaintiff to the ground. Plaintiff alleges he was never told to "get down" nor did he offer any resistance. Taking Plaintiff to the ground took approximately two to three seconds.

Plaintiff claims his face was deliberately pushed against the asphalt by Diaz and Defendants[1] sat on his back and legs. He also alleges that Officer Diaz deliberately gouged his fingers into Plaintiff's eyes. Officers Rangel and Jordan attested that they never sat on Plaintiff or applied unreasonable pressure to his back or any body part. Plaintiff remained on the ground for approximately twenty to thirty seconds while Officers Jordan and Deathridge handcuffed him. Officer Jordan believed that the handcuffs were applied appropriately. At the time, Plaintiff never complained that the handcuffs were too tight. Plaintiff now alleges that the handcuffs were put on extremely tight and cut into his wrists and hands, restricting blood flow.

Officers Jordan and Deathridge escorted Plaintiff to the medical facility which took about 30 to 45 seconds. During the escort, Officer Jordan raised Plaintiff's hands because he believed that Plaintiff was trying to grab his hands. Plaintiff alleges the handcuffs were pushed upwards by Officers Jordan and Deathridge, forcing him into a bent over crouch, rather than walking upright. He claims during the escort, Officer Diaz walked along side him with his baton drawn, yelling abusive statements. Once they arrived at the medical facility Plaintiff claims he was shoved into a cell by Officers Jordan and Deathridge and the handcuffs were not removed. As a result of these

---

[1] In Plaintiff's complaint, he states that "other correctional officers present" assisted Diaz in bringing him to the ground and that "other defendants" were then "situated on Plaintiff's back and legs." He does not specify who he alleges to have sat on him. In his deposition, he stated that Defendants Deathridge, Rangel, Diaz and possibly Jordan were involved in taking him to the ground. It would follow that he is likely alleging that all or some of these individuals were the ones who allegedly sat on him.

**Page 2**

actions, Plaintiff claims he lost feeling and sensation in his left hand for five months, scars remained on his wrists for 70 days, and his existing lower back pain was greatly aggravated.

## II.
## Procedural Background

Plaintiff filed his complaint on April 6, 2007. (Docket No. 1). After an order dismissing Plaintiff's complaint with leave to amend was filed, Plaintiff notified the Court that he wished to proceed only on the claims recognized as viable. On February 26, 2008, the Court recommended dismissal of all of Plaintiff's claims except for his claim of excessive force against Defendants Diaz, Rangel, Jordan and Deathridge. (Docket No. 11).

On June 17, 2008, Defendant Deathridge was dismissed for lack of service because Plaintiff had failed to show good cause why he had not been served. (Docket No. 22). On September 9, 2008, Defendants filed a suggestion of death for Defendant Diaz. (Docket No. 28). The Court held that Rule 25's 90-day time period had not been triggered because there was no declaration of service or other proof reflecting that there has been proper service of the suggestion of death on the nonparty successors or representatives of Defendant Diaz. (Docket No. 29).

On March 23, 2009, Defendants Jordan and Rangel filed a motion for summary judgment. (Docket No. 35). Plaintiff did not file any opposition or response.

## III.
## Discussion

**A.    Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. See id. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving

party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

**B.     Qualified Immunity and Excessive Force**

The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," inasmuch as the defense is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly established federal rights. *Harlow v. Fitzergerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court mandated a two step sequence for resolving qualified immunity claims. First, a court must decide whether the alleged facts make out a violation of a constitutional right. *Id.* at 201. If the plaintiff satisfies the first

Page 5

step, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id*. This involve a two-part inquiry; was the law clearly established and under that law, could reasonable state officials believe their conduct was lawful. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001).

More recently, however, the Supreme Court revisited *Saucier* and concluded that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. ---, 129 S.Ct 808, 811 (2009). "The judges . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. To determine whether the alleged facts make out a constitutional violation, the facts must be taken in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. at 201.

The law regarding a prison guard's use of excessive force has been clearly established for many years. *See Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). The *Hudson* court noted that the "settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eight Amendment.'" *Hudson*, 503 U.S. at 5 (quoting *Whitley*, 475 U.S. at 320-21). The *Hudson* court set forth five factors to consider in making this determination: (1) the extent of the inmate's injury; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id*. at 7.

In *Hudson*, the court specifically instructed: "The absence of serious injury is therefore

relevant to the Eighth Amendment inquiry, but does not end it." *Id*. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. at 9. Rather, physical force that is repugnant to the conscience of mankind "need not result in a significant injury" to be actionable. *Id*.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The law of excessive force in this country is that a prisoner cannot be subject to gratuitous or disproportionate force that has no object but to inflict pain. *Id*.

Taken in the light most favorable to Plaintiff, the facts alleged do not show that Officers Rangel and Jordan violated Plaintiff's constitutional rights by using excessive force. There is no evidence or allegation that Defendants Rangel and Jordan acted maliciously or sadistically to cause harm. The force that they used was not "repugnant to the conscience of mankind" nor "gratuitious and disproportionate." *See id*.

Officer Rangel ordered Plaintiff to put his hands on the wall after Plaintiff ignored Officer Diaz's orders. Officer Rangel tried to verbally calm Plaintiff. Officer Diaz and Plaintiff engaged in a struggle with Diaz pulling Plaintiff's arm and Plaintiff pulling it back. Officer Rangel then assisted Officer Diaz in taking Plaintiff to the ground. Plaintiff alleges that Officer Rangel, and other officers, sat on either his back or legs after he was taken to the ground. Officer Jordan then handcuffed Plaintiff and Plaintiff was lifted up and escorted to the medical facility by Officers Jordan and Deathridge. Plaintiff never complained that his handcuffs were too tight. The entire

Page 7

incident with Officers Rangel and Jordan lasted a few minutes.

      The force applied by Officers Jordan and Rangel during this incident was proportionate to the situation.  The relationship between the need for application of force and the amount of force actually used does not indicate a gratuitous or sadistic infliction of pain.  *Cf. Hudson*, 503 U.S. 1 (1992) (inmate was punched in his mouth, eyes, chest and stomach by one prison guard while another guard held him in place and kicked and punched him from behind).  Officers Rangel and Jordan used only the amount of force the situation required.  Plaintiff did not listen to Officer Diaz's directions, struggled with Diaz at the wall, and once handcuffed, appeared to be resisting.  Jordan and Rangel responded with the appropriate force necessary to handle the situation.  There is no indication that the amount of force used was remotely close to "unnecessary and wanton infliction of pain."

      Plaintiff's claim also fails under the second *Saucier* factor.  A reasonable officer in Rangel and Jordan's position could not have believed their actions were unreasonable.  As stated above, Rangel told Plaintiff to put his hands on the wall and tried to verbally calm him down; he then assisted Diaz who was struggling to take the Plaintiff down and helped to hold him down until he was handcuffed.  According to Plaintiff, Rangel and possibly Jordan sat on his back and/or legs while he was on the ground.  Assuming for the sake of argument that one or both of these Defendants sat on Plaintiff's back or legs, it is clear that neither had any knowledge of Plaintiff's back trouble, nor did Plaintiff immediately bring it to their attention.  There are no other obvious facts that show that a reasonable officer would have determined that sitting on Plaintiff was not a reasonable, simple, and safe way to keep him from rising from the ground as he was handcuffed.  Jordan placed the handcuffs on Plaintiff once he was on the ground and then escorted him to the

medical facility. During the course of doing so, Jordan raised Plaintiff's hands in the handcuffs because he believed Plaintiff was reaching for his hands. None of these actions would seem excessive to a reasonable officer confronted with a similar situation in which an inmate appeared to be disobeying an officer and resisting a minimal application of physical force to gain compliance. The actions that were taken were used in a good faith effort to maintain discipline, not for sadistic or malicious purposes. Accordingly, Officers Rangel and Jordan are entitled to qualified immunity.

### C.     Officer Diaz

On March 13, 2008, the Court directed the United States Marshal to initiate service on Defendant Diaz. (Docket No. 13). However, the Marshal was unable to locate and serve Diaz and on July 14, 2008, the Marshal returned the USM-285 form for Diaz to the Court. (Docket No. 25). On September 9, 2008, counsel for Defendants Rangel and Jordan filed a suggestion of death of Defendant Diaz. (Docket No. 28).

It is Plaintiffs' duty to provide the service address of this Defendant, or his successors or representatives, to the Court. *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) (plaintiff is responsible for providing marshal with proper address for service of defendants). Where a pro se plaintiff fails to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint, the court's sua sponte dismissal of the unserved defendant is appropriate. *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994). Pursuant to Rule 4(m), the Court will provide Plaintiff with the oppotunity to show cause why Defendant Diaz should not be dismissed from the action at this time.

### **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1.	Within **twenty (20) days** from the date of service of this order, plaintiff shall show cause why Defendant Diaz should not be dismissed from this action; and

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that:**

1)	Defendants Rangel and Jordan's Motion for Summary Judgment (Docket No. 35) should be **GRANTED**.

2)	Should Plaintiff not show adequate cause for failure to serve Defendant Diaz, all claims against Defendant Diaz should be dismissed without prejudice.

Written objections to this Report and Recommendation must be filed within **twenty (20) days** pursuant to 28 U.S.C. § 636(b)(1). The document should be captioned "Objections to Magistrate Judge's Report and Recommendation." The parties are advised that as result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 5, 2009

Honorable Mikel H. Williams
United States Magistrate Judge